# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

LEEMON HOWARD JOHNSON and )
KIMBERLY ANN MCINTIRE, )
                               )
           Plaintiffs, )
                               )
v.                              )         Case No. 19-CV-250-JED-FHM
                               )
STATE FARM FIRE AND CASUALTY )
COMPANY and )
MICHAEL HOPKINS, )
                               )
           Defendants. )

## OPINION AND ORDER

The Court has for its consideration Plaintiffs' Motion to Remand (Doc. 10). Defendant

State Farm Fire and Casualty Company opposes remand, arguing that Plaintiffs Leemon Howard

Johnson and Kimberly Ann McIntire fraudulently joined State Farm's adjuster, Defendant Michael

Hopkins, in order to defeat removal. (*See* State Farm's Notice of Removal, Doc. 2; State Farm's

Response to Plaintiffs' Motion to Remand, Doc. 13). For the reasons set out below, the Court

concludes that joinder of Mr. Hopkins was proper. Plaintiffs' Motion to Remand is, therefore,

granted.

## I.     Background

This dispute arose after a fire destroyed the home of Mr. Johnson and Ms. McIntire, leading

them to file a claim under their policy with State Farm. Mr. Hopkins, a State Farm employee,

investigated the claim. (Doc. 2-14 at 1–2). After the adjustment process ended at loggerheads, Mr.

Johnson and Ms. McIntire filed suit in Osage County District Court. The initial petition's three-

counts pleaded breach of contract and bad faith against State Farm and intentional infliction of

emotional distress against Mr. Hopkins. (Doc. 2-2 at 3–5). Mr. Johnson and Ms. McIntire later

amended the petition to add an allegation of tortious interference with contract against Mr. Hopkins. (Doc. 2-8 at 6–7). Shortly thereafter, State Farm filed a Notice of Removal with the Court (Doc. 2).

Mr. Johnson and Ms. McIntire timely filed this Motion to Remand (Doc. 10), arguing that the Court lacks jurisdiction to hear this case. Mr. Johnson and Ms. McIntire are citizens of Oklahoma, and Mr. Hopkins is also a citizen of Oklahoma. (Doc. 10 at 1). Because the claims are based in state law, and Mr. Hopkins is a non-diverse defendant, Mr. Johnson and Ms. McIntire argue that the Court lacks subject matter jurisdiction over the action and must, therefore, remand it to state court.

## II.    Legal Standards: Removal and Fraudulent Joinder

When a plaintiff brings a civil action in state court, but a federal district court has proper jurisdiction to hear it, a defendant may remove the case to federal court. 28 U.S.C. § 1441(a). The relevant jurisdictional grant in this case, 28 U.S.C. § 1332(a), provides that district courts shall have original jurisdiction over civil actions between citizens of different states. Jurisdiction is proper, however, only where there is complete diversity of citizenship; no plaintiff can be a citizen of the same state as any of the defendants. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Additionally, where federal jurisdiction is based in diversity, the so-called forum-defendant rule bars removal when any of the "properly joined" defendants is a citizen of the state where the action was originally brought. 28 U.S.C. § 1441(b)(2).

A defendant may nevertheless remove a case to federal court based on diversity if the plaintiff fraudulently joined the nondiverse defendant in order to defeat federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Am. Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412–13 (10th Cir. 1991). To establish fraudulent joinder, "the

removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.*

It is not entirely clear what the removing party must prove in order to "demonstrate" a plaintiff's "inability to establish a cause of action."[1] *Dutcher* did not announce a standard of proof, and the Tenth Circuit, in a pair of recent, unpublished cases, seemed to announce contradictory standards. In *Montano v. Allstate Indemnity*, the court held that the party alleging fraudulent joinder must prove the plaintiff "ha[s] *no possibility* of recovery" against the nondiverse defendant. No. 99-2225, 2000 U.S. App. LEXIS 6852, at *12 (10th Cir. Apr. 14, 2000) (emphasis added). In *Nerad v. AstraZeneca Pharm., Inc.*, however, the court said fraudulent joinder turned on "whether there is a *reasonable basis* to believe the plaintiff might succeed in at least one claim against the nondiverse defendant." *Id.* 203 F. App'x 911, 913 (10th Cir. 2006) (emphasis added) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 282, 293 (5th Cir. 2000)). "A 'reasonable basis'," the court said, "means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.*

Significant daylight separates the two standards. Belief in a plaintiff's eventual success may be unreasonable even as a possibility of recovery, however slim, remains. Consequently, the

---

[1] There is relatively little circuit-level law dealing with fraudulent joinder because an order remanding for lack of subject matter jurisdiction is not reviewable. *See* 28 U.S.C. § 1447(d); *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995). For an exhaustive review of the Tenth Circuit's decisions in fraudulent joinder cases, see *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1111–16 (D.N.M. 2017).

Court must determine which standard will guide its inquiry. A careful read of the cases shows *Montano* to be the weightier authority.

In *Montano*, the plaintiffs sued their insurer and its agent, whom they alleged had negligently failed to procure insurance coverage as directed. 2000 U.S. App. LEXIS 6852, at *2–3, *6. Although joinder of the agent destroyed complete diversity, the insurance company successfully removed the case based on fraudulent joinder. *Id.* at *3. On appeal, the Tenth Circuit reversed.

The court brushed aside the insurance company's argument that, under New Mexico law, an insurance agent was not an agent of the insured and could therefore not be held liable to him. After reviewing state law, the court concluded that this immunity was not absolute. *Id.* at *8–9. Proving fraudulent joinder, the court explained, requires more than a showing that recovery is unlikely in state court:

> This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced. "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."

*Id.* at *5–6 (citation omitted) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–53 (3d Cir. 1992). Because the state's agent-immunity rule was not absolute, the insurance company had failed to prove that the agent's joinder was fraudulent. *Id.* at *11–12.

Although it did not say so explicitly, the court appears to have applied a similar "no possibility of recovery" standard in *Dutcher*. *See* 733 F.3d at 987–89. In *Dutcher*, the district court found that the nondiverse defendants, an attorney and his law firm, were fraudulently joined because it was "well established" under Utah law that attorneys could not be held liable to nonclients absent fraud, collusion, or privity of contract. *Id.* The Tenth Circuit remanded, holding

that the removing party had failed to show the plaintiffs could not establish a cause of action in state court.

The court's reasoning in *Dutcher* tracks closely with the reasoning applied *Montano*. *See Dutcher*, 733 F.3d at 987–89. As it did in *Montano*, the Tenth Circuit concluded that the district court had misconstrued state law and, in doing so, overstated the futility of the plaintiffs' claims. *See id.* at 988. The court reasoned that the relevant case did endorse the nonliability of attorneys with respect to nonclients, but it did so in the context of duties owed to nonclients when rendering legal services. *Id.* (citing *Oxendine v. Overturf*, 973 P.2d 417, 421 (Utah 1999)). The plaintiffs in *Dutcher*, meanwhile, had alleged independent torts, so the supposed bar to liability did not apply. *Id.* Pointedly, the court declined to address the merits of the plaintiffs' claims:

> Because *Oxendine* does not support the defendants' broad proposition regarding the immunity of counsel when acting as agent for their clients, we cannot hold that Matheson and his law firm were fraudulently joined. However, that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e. fraudulent joinder. We are left then with the presence of non-diverse parties and thus we conclude that diversity jurisdiction has not been established.

*Id.* at 989. Put more succinctly, the removing party failed to prove that recovery was impossible against the nondiverse defendants.

*Nerad*'s "reasonable basis" standard, by contrast, clashes with *Dutcher*.[2] Determining "whether there is a reasonable basis to believe that the plaintiff might succeed" necessarily entails

---

[2] The court offered the "reasonable basis" standard in dicta, part of a boilerplate recitation of the law governing remand and fraudulent joinder. *See Nerad v. AstraZeneca Pharm., Inc*., 203 F. App'x 911, 912–13 (10th Cir. 2006). The issue on appeal in *Nerad* was not whether the district court's finding on fraudulent joinder was correct; it was whether the finding was reviewable at all. *Id.* at 912–13. Because the court held that the district court's decision was unreviewable, the court never actually applied the rule it articulated.

the kind of merits evaluation that the court in *Dutcher* explicitly eschewed. *See Dutcher*, 733 F.3d at 989.

Considering the foregoing analysis, the Court will apply *Montano*'s standard to determine whether State Farm has met its burden under *Dutcher* to demonstrate the plaintiffs' inability to a establish a cause of action against Mr. Hopkins. Unless State Farm has proven the plaintiffs would have no possibility of recovery in state court on either claim against him, this Court must remand. *See Montano*, 2000 U.S. App. LEXIS 6852, at *12.

## III.  Discussion

State Farm makes a two-pronged attack on Mr. Johnson's and Ms. McIntire's first claim, which alleges intentional infliction of emotional distress (IIED). First, State Farm argues that public policy considerations, as outlined by the Oklahoma Supreme Court, "weigh against permitting a plaintiff to pursue an IIED claim against an insurer's adjuster." (Doc. 2 at 14). Second, State Farm argues that, even if public policy permitted Mr. Johnson and Ms. McIntire to pursue the claim, the allegations in their petition "are wholly inadequate to state a claim for IIED against Mr. Hopkins." *Id.* Neither argument proves that Mr. Johnson and Ms. McIntire would have no possibility of recovering against Mr. Hopkins in state court.

### A.  Public Policy

State Farm's public policy argument never gets out of the starting blocks. Even if Oklahoma's policy does "weigh against permitting a plaintiff to pursue an IIED claim against an insurance adjuster," this does not prove fraudulent joinder. It is one thing to assert that a state's public policy precludes the cause of action; it is another to assert that the policy merely weighs against it. The former says, "recovery is impossible"; the latter says, "recovery is unlikely." And a party is not fraudulently joined when recovery is merely unlikely. *See **Dutcher v. Matheson**, 733*

F.3d 980, 988 (10th Cir. 2013); *Montano v. Allstate Indemnity*, No. 99-2225, 2000 U.S. App. LEXIS 6852, at *12 (10th Cir. Apr. 14, 2000).

Moreover, State Farm overstates the degree to which the Oklahoma Supreme Court has insulated adjusters from liability. It is true that a policy holder cannot sue his insurer's independent agent for *negligence* during the claims process. *See Trinity Baptist Church v. Brotherhood Mutual Insurance Services, LLC*, 341 P.3d 75 (Okla. 2014). Here, however, the claim is for IIED, an intentional tort. State Farm attempts to sidestep this distinction by construing *Trinity Baptist* and similar cases to mean that, when a dispute arises from the adjustment process, "any wrongful conduct is attributable to the insurer as opposed to the adjuster." (Doc. 13 at 16). It seems unlikely that the Oklahoma Supreme Court intended such a sweeping grant of immunity, as it would give adjusters free rein to engage in underhanded tactics during the adjustment process. This is not to say that *Trinity Baptist* is wholly irrelevant to the present case; Oklahoma courts might someday extend *Trinity Baptist* to bar IIED claims against adjusters. They have not done that yet, however, and it is not for this Court to do so in their stead. *See Montano,* 2000 U.S. App. LEXIS 6852, at *5 (noting that, where fraudulent joinder is alleged, the federal court "must initially resolve . . . all ambiguities in the controlling law in favor of the non-removing party").

**B.** **Adequacy of the Plaintiffs' Allegations**

Next, State Farm argues that Mr. Johnson and Ms. McIntire have failed to allege facts sufficient to establish a cause of action for IIED. In order to recover for IIED, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). There can be no liability unless the offending conduct "has so totally and completely

exceeded the bounds of acceptable social interaction that the law must provide redress." *Ridings v. Maze*, 414 P.3d 835, 839 (Okla. 2018).

Here, Mr. Johnson and Ms. McIntire's petition (Doc. 2-8 at 4–6) alleges the following: Mr. Hopkins "intentionally and repeatedly berated, belittled and chastised" them "throughout the claim process." He "accused them of lying and overstating the amount of their loss" without any reasonable basis for doing so and in a manner "designed to oppress." After they supplied him with an inventory of their personal property, he said, "look, nobody has this much stuff," and, "you didn't have things this expensive." He "stated that he would not issue payment" for many items for which Plaintiffs had no receipts, even though the fire had destroyed "everything they own." When Mr. and Ms. McIntire objected, Mr. Hopkins told them that management already believed State Farm had overpaid their claim, saying, "if you push it, I'll take this back up the chain." This statement "suggest[ed] that if Plaintiffs did not agree to accept State Farm's evaluation of the claim, State Farm would take back monies already paid." This conduct "was extreme and outrageous, and caused the Plaintiffs severe emotional distress."

State Farm argues that these allegations "even if proven true, simply do not support a claim for IIED against Mr. Hopkins." (Doc. 2 at 21). This is plainly not the case. The petition alleges verbatim each element required to make out a prima facie case for IIED. Necessarily, then, if Mr. Johnson and Ms. McIntire prove those allegations, they will have established a claim for IIED. State Farm's actual argument seems to be that the specific conduct alleged in the complaint is insufficient to prove IIED. In this, State Farm may well be correct. IIED is, as the company points out, "exceptionally difficult to prove" under Oklahoma law, and State Farm cites a litany of cases where Oklahoma courts have rejected IIED claims because the conduct, though outrageous, was not outrageous enough. (Doc. 13 at 19 & n.3; *see also* Doc. 2 at 22). These cases show that Mr.

Johnson and Ms. McIntire will have to amass significant evidence in order to survive summary judgment, but the cases do not demonstrate that the IIED claim against Mr. Hopkins will fail as a matter of law.

State Farm's argument tacitly assumes that the standard for proving fraudulent joinder is interchangeable with the standard for winning dismissal under Rule 12(b)(6).[3] It is not. *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1132 (D.N.M. 2017); *Estes v. Airco Serv.*, No. 11-CV-776, 2012 U.S. Dist. LEXIS 72134, at *7 n.1 (N.D. Okla. May 24, 2012); *Shue v. High Pressure Transps., LLC* No. 10-CV-559, 2010 U.S. Dist. LEXIS 123758, at *21–23 n.2 (N.D. Okla. Nov. 22, 2010). The question presented by an allegation of fraudulent joinder is not whether a pleading would survive dismissal in federal court; it is whether the plaintiff can establish a cause of action *in state court*. *See Dutcher*, 733 F.3d at 988. And in Oklahoma courts, a petition must not be dismissed for failure to state a claim "unless the allegations show beyond any doubt that the litigant can prove no set of facts that would entitle him to relief." *Indiana Nat'l Bank v. State Dep't of Human Servs.*, 880 P.2d 371, 375–76 (Okla. 1994). The plaintiffs' petition alleges the elements of a prima facie case for IIED, and State Farm has not shown that they would be unable to prove facts consistent with those allegations.

In short, Oklahoma's public policy does not clearly prohibit an insured party from pursuing a claim for IIED against an insurance adjuster, and State Farm has not shown that Mr. Johnson and Ms. McIntire have failed to make out a claim for IIED. Because State Farm has not demonstrated

---

[3] For example, State Farm argues that "[b]ecause Plaintiffs' allegations do not *plausibly* show Mr. Hopkins actions 'were extreme and outrageous,' Plaintiffs cannot establish a claim for IIED against him." (Doc. 13 at 20) (emphasis added). The reference to plausibility evokes the federal standard, which holds that a complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

their inability to establish a cause of action against Mr. Hopkins in state court, the company has failed to carry its burden to prove he was fraudulently joined.

The Court need not address the viability of Mr. Johnson's and Ms. McIntire's tortious interference claim. Where recovery is possible on any claim against the nondiverse defendant, remand is required. *Montano*, 2000 U.S. App. LEXIS 6852, at *6.

## IV.    Conclusion

State Farm has failed to prove that Mr. Johnson and Ms. McIntire fraudulently joined Mr. Hopkins. And Mr. Hopkins is a citizen of Oklahoma, as are the plaintiffs. Consequently, this Court lacks jurisdiction over this action. Plaintiffs' Motion to Remand is hereby **granted**.

SO ORDERED this 22nd day of October, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT